[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10502

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DEUNATE TAREZ JEWS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 1:20-cr-00211-CLM-SGC-1

_____

Before WILSON, NEWSOM, and LAGOA, Circuit Judges.

NEWSOM, Circuit Judge:

It's an axiom of American sentencing law and policy:  You do more crimes, you do more time.  The United States Sentencing Guidelines observe that norm.  But they make certain allowances for juvenile convictions.  Sometimes, those get excused—erased from the rap sheet, as it were.  Accordingly, distinguishing adult from juvenile convictions can be important.  So it is here.

Deunate Jews, who pleaded guilty to illegally possessing a firearm in violation of federal law, was sentenced to 60 months in prison based on a Guidelines range of 70–87 months.  In calculating Jews's range, though, the district court concluded that an earlier Alabama youthful-offender adjudication constituted an "adult" conviction within the meaning of the applicable Guidelines provisions.  Jews contends that the court erred in doing so.

Jews is right.  His Alabama YO adjudication wasn't an adult conviction.    Because the district court miscalculated Jews's Guidelines range, we vacate his sentence and remand for resentencing.[1]

## I

After Jews pleaded guilty in 2021 to being a felon in possession of a firearm in violation of federal law, *see* 18 U.S.C.

---

[1] Because Jews is scheduled to complete his sentence in August 2023, the parties and the district court are directed to proceed to next steps immediately.

§ 922(g)(1), the district court sentenced him to 60 months in prison. In arriving at that number, the court began (as it should have) by consulting the Sentencing Guidelines. *See Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018) ("District courts *must* begin their analysis with the Guidelines."). To derive a Guidelines range, the court had to compute Jews's "offense level" and then sort him into a "criminal history category." *See* U.S.S.G. ch. 5.

The district court initially set Jews's base offense level at 24—applicable to defendants with "at least two [prior] felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(2). According to the Guideline's commentary, a qualifying "felony conviction[]" must (for someone in Jews's situation) be an "adult federal or state conviction for an offense punishable" by at least a year in prison. *Id*. § 2K2.1 cmt. 1.[2] Jews's two predicate "felony convictions," the court concluded, were (1) a 2014 Alabama adult conviction for assault and (2) a 2004 Alabama youthful-offender adjudication for robbery that earned him a three-year sentence. The court thereafter reduced Jews's base level from 24 to 21 as a reward for his acceptance of responsibility.

The district court then placed Jews in criminal-history Category V—applicable to defendants with 10, 11, or 12 criminal-history points. Of Jews's 11 points, 3 were attributable to his

---

[2] No party contests the commentary's validity here, or the propriety of its interpretation of § 2K2.1's text. *Compare United States v. Dupree*, 57 F.4th 1269, 1275–78 (11th Cir. 2023) (en banc).

Alabama YO adjudication. According to the Guidelines, those points were appropriate if, but only if, the YO adjudication was one in which Jews "was convicted as an adult and received a sentence of imprisonment exceeding one year and one month." U.S.S.G. 4A1.2(d)(1).

When combined, Jews's adjusted offense level of 21 and his Category V criminal history yielded a Guidelines range of 70–87 months' imprisonment. The district court imposed a below-Guidelines sentence of 60 months.

Jews appealed. Before us, he contends that at both stages—setting his offense level and tallying his criminal-history score—the district court erroneously treated his YO adjudication as an "adult" conviction. Because it wasn't, he says, his base offense level should have been 20, rather than 24, and his criminal-history score should have been 8, rather than 11. Correcting for those errors, Jews continues, his applicable Guidelines range should have been 37–46 months. He thus asks us to vacate his sentence and remand for resentencing.

## II

Jews is correct: His YO adjudication wasn't "adult" for purposes of either the base-level designation or the criminal-history calculation. To explain why, we'll begin with the text of the applicable Guidelines and their explanatory commentary. As our precedent requires, we'll then apply a multifactor test to determine the "adultness" (our word, if it's a word) of Jews's YO adjudication under both Guidelines.

**A**

First, the base-level Guideline, U.S.S.G. § 2K2.1. All here agree that Jews's base level is either 20, if he had only one "felony conviction," or 24, if he had at least two. *Compare* U.S.S.G. § 2K2.1(a)(4)(A) (one), *with id.* § 2K2.1(a)(2) (at least two). The dispute hinges on whether Jews's Alabama YO adjudication was a "felony conviction[]." *Id.* § 2K2.1(a)(2). If it was, then his base level is 24; if it wasn't, then it's 20.

As already explained, the commentary explains that to qualify as a "felony conviction" under § 2K2.1, an adjudication must be an "*adult* federal or state conviction" punishable by at least a year in prison. *Id.* cmt. 1 (emphasis added). So, indulging the parties' shared assumption that the commentary informs § 2K2.1's proper application here, the question is whether Jews's YO adjudication was an "adult . . . conviction." If Jews had been at least 18 when he committed the YO offense, the answer would be easy: As § 2K2.1's commentary explains, any "conviction for an offense committed at age eighteen years or older is an adult conviction," *id.*, and we've already held that an Alabama YO adjudication involving an individual north of 18 is a "conviction" under that provision, *see United States v. Elliot*, 732 F.3d 1307, 1313 (11th Cir. 2013). But Jews was only 16 when he committed the offense underlying his YO adjudication. And the commentary's very next sentence clarifies that the rules applicable to under-18 offenses are different, in that their adultness depends on *state* law: "A conviction for an offense committed prior to age eighteen years is an adult conviction if it is classified as an adult conviction under the

22-10502                Opinion of the Court                6

laws of the jurisdiction in which the defendant was convicted."
U.S.S.G. § 2K2.1 cmt. 1.

Next, the criminal-history guideline, U.S.S.G. § 4A1.2(d)(1).
Like § 2K2.1, it forgives past convictions that aren't "adult."[3]  But
its wording is (just) slightly different:   It asks not whether an
underlying conviction was an "adult conviction," but whether the
defendant was "convicted as an adult."  *Id*.  And its commentary
focuses less on how state law "classifie[s]" the conviction than on
what kind of sentence the defendant received:   "[F]or offenses
committed prior to age eighteen, only those that resulted in adult
sentences of imprisonment exceeding one year and one month . . .
are counted."  *Id*. cmt. 7.

**B**

Despite their slight textual differences, our precedent directs
us to apply the same test to determine adultness under both
§§ 2K2.1 and 4A1.2.  *See United States v. Wilks*, 464 F.3d 1240, 1242
(11th Cir. 2006) (interpreting Guideline materially identical to
§ 2K2.1[4]); *United States v. Pinion*, 4 F.3d 941, 944 (11th Cir. 1993)

---

[3] Under § 4A1.2(d)(2), a federal court may add criminal-history points (2 and
1, respectively) for certain underlying non-adult sentences—namely, (a) for
any sentence of at least 60 days, if the defendant was released within five years
of the commission of the federal offense at issue, and (b) for any other sentence
imposed within five years of the commission of the federal offense.  No one
contends that either condition applies to Jews.

[4] Wilks involved U.S.S.G. § 4B1.1, which is materially identical to § 2K2.1.
Both assign sentences to defendants with "prior felony convictions," and both
define that phrase the same way.  *Compare* U.S.S.G. § 4B1.1 cmt. 1 (noting that

22-10502                Opinion of the Court                7

(deciding whether an offense "resulted in [an] adult sentence[]" under § 4A1.2(d)(1)).[5] That test comprises a handful of factors that bear on "whether a defendant was convicted as an adult." *Wilks*, 464 F.3d at 1242. They are (1) how state law "technically classif[ies]" the defendant's conviction, *Pinion*, 4 F.3d at 944 n.6, (2) "the nature of the proceedings," *Wilks*, 464 F.3d at 1242, (3) "the sentence[] received," *id.*, and (4) "the actual time served," *id.*[6]

---

the phrase "'two prior felony convictions' [is] defined in [U.S.S.G. §] 4B1.2"), *and* U.S.S.G. § 4B1.2 cmt. 1 ("'Prior felony conviction' means a prior adult federal or state conviction . . . . A conviction for an offense committed prior to age eighteen is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted."), *with* U.S.S.G. § 2K2.1 cmt. 1 ("A conviction for an offense committed prior to age eighteen years is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted.").

[5] *See also* U.S.S.G. § 2K2.1 cmt. 10 ("For purposes of applying subsection (a)(1), (2), (3), or (4)(A), use only those felony convictions that receive criminal history points under § 4A1.1(a), (b), or (c). In addition, for purposes of applying subsection (a)(1) and (a)(2), use only those felony convictions that are counted separately under §4A1.1(a), (b), or (c). *See* § 4A1.2(a)(2). Prior felony conviction(s) resulting in an increased base offense level under subsection (a)(1), (a)(2), (a)(3), (a)(4)(A), (a)(4)(B), or (a)(6) are also counted for purposes of determining criminal history points pursuant to Chapter Four, Part A (Criminal History)."); *cf. also id.* § 4B1.2 cmt. 3 ("The provisions of § 4A1.2 (Definitions and Instructions for Computing Criminal History) are applicable to the counting of convictions under § 4B1.1.").

[6] The first factor appeared in *Pinion* but not in *Wilks*. We include it here for two reasons. One, § 2K2.1's commentary keys on state law's "classifi[cation]" of a conviction as the touchstone of the adultness inquiry. Two, the factor played a role in *Pinion*. The likely reason it didn't show up in *Wilks* is that *Pinion* had demoted it to a footnote—presumably because the state law at issue there (South Carolina's) didn't classify the defendant's conviction one way or

22-10502                Opinion of the Court                8

So let's walk through them.

***Classification***.   Foremost among the *Pinion* factors is how state law classifies the defendant's conviction.[7]  Here, that's easy: Under Alabama law, "[a]n adjudication of youthful offender status . . . is not deemed a conviction of crime at all," let alone an adult conviction.  *Gordon v. Nagle*, 647 So. 2d 91, 95 (Ala. 1994); *accord, e.g.*, Ala. Code § 15-19-7 (providing that a YO adjudication "shall not be deemed a conviction of crime"); *Elliot*, 732 F.3d at 1312–13 (dicta) ("Alabama law does not consider a youthful offender adjudication to be a conviction.").  Nor does Alabama law treat YO adjudications as "prior felony conviction[s]" under the state's Habitual Felony Offender Act.  *Gordon*, 647 So. 2d at 95.  So a YO adjudication isn't classified as an adult conviction in Alabama—either in general or for career-offender purposes.

_____

the other.  *See Pinion*, 4 F.3d at 944 n.6 (observing that state law "did not technically classify the defendant's convictions as those of an adult or of a juvenile").  Because state law's classification was a nonfactor, it didn't appear above the line.  Here, things are different.  For reasons we explain in text, Alabama law has, we think, "classified" Jews's YO adjudication.  And as both the Guidelines and common sense suggest, that adjudication's classification should inform whether it is "adult" under Alabama law.

[7] You might think that state law's classification would resolve the § 2K2.1 inquiry given the commentary's focus on whether the YO adjudication "is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted."  U.S.S.G. § 2K2.1 cmt. 1.  But alas, this Court hasn't seen it that way; classification is a relevant consideration, but not a decisive one.

The government resists this reasoning. It insists that it's irrelevant whether Alabama classifies YO adjudications as "convictions."[8] All that matters, the government says, is whether Alabama classifies YO adjudications as "adult." Br. of Appellee at 9. Respectfully, the government is ignoring the overlap between those two things. Of course, as a matter of logic—in the Venn-diagram sense—it would seem to follow that if, as Alabama law clearly states, a YO adjudication isn't a conviction "at all," *Gordon*, 647 So. 2d at 95, then it certainly can't be an *adult* conviction, the latter being a mere subset of the former. But we needn't even go that far because, in any event, by refusing to classify YO adjudications as convictions, Alabama law confirms, at the very least, that a defendant's youthful status renders the proceeding against him something less—and less serious—than a full-blown adult proceeding. That difference confirms what Jews's YO status itself suggests: Alabama law treats YO adjudications as "youthful," not adult.[9]

---

[8] The government's principal in-circuit authority, *Elliot*, is off-point. There, it's true, we affirmed a decision to increase a defendant's Guidelines range because of a previous Alabama YO adjudication, ruling that it was an adult conviction. *See* 732 F.3d at 1312–13. But the defendant there "was 20 years old when he committed the Alabama state offense," meaning—as we've already explained, *see supra* at 5–6, that we had to apply *federal* law, not state law, "to determine whether that adjudication qualified as an adult conviction." *Id*. at 1311. So *Elliot* didn't present the question we face here, which is whether an Alabama YO adjudication is an "adult conviction" under *state* law. *Id*. at 1310–11.

[9] The First Circuit's decision in *United States v. Curet*, 670 F.3d 296 (1st Cir. 2012), on which the government heavily relies, isn't to the contrary. As an

22-10502                    Opinion of the Court                    10

*Nature of the proceedings*.    As Alabama's non-conviction classification suggests, YO adjudications are "very different from conviction as an adult." *Id.*   That is true both substantively and procedurally.

As a substantive matter, Alabama YO adjudications don't entail the "practical consequences of a[n adult] conviction for a crime." *Raines v. State*, 317 So. 2d 559, 564 (Ala. 1975).   For instance, an Alabama YO adjudication can't "disqualify any youth for public office or public employment, operate as a forfeiture of any right or privilege or make him ineligible to receive any license granted by public authority."   Ala. Code § 15-19-7(a).   Nor can it be used to impeach a witness, as an adult conviction can.   *See* Ala. R. Evid. 609(d).   These cushioned consequences, we think, plainly indicate the non-adult nature of Alabama's YO system.

As a procedural matter, an Alabama YO adjudication lacks the usual hallmarks of a criminal trial.   A YO proceeding, for instance, begins with a non-adversarial hearing in which the defendant is "investigated and examined by the court to determine

---

initial matter, the state there treated the disposition at issue—"guilty-filed"— as unique for reasons wholly unrelated to the defendant's age. *See id.* at 303– 04.   Moreover, and in any event, the First Circuit rejected only the absolutist, Venn-diagram position that if a state adjudication isn't classified as a "conviction" under state law, then by definition it can *never* be an "adult conviction" under that law.   *Id.* at 304.   Candidly, we think that logic checks out—the greater, it seems, includes the lesser—but as noted in text, we can safely rest our decision on the more modest proposition that a state's refusal to classify a YO adjudication as a conviction indicates its determination that a YO adjudication lacks the traditional hallmarks of adultness.

whether he or she should be tried as a youthful offender." Ala. Code § 15-19-1(a). The court then exercises its "discretion" to determine whether YO treatment is appropriate. *Gordon*, 647 So. 2d at 95. Those designated for YO status thereafter proceed to a bench trial—rather than the traditional criminal jury trial. *See* Ala. Code § 15-19-4; *cf.* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."). And that trial is "conducted at court sessions separate from those for adults charged with crime." Ala. Code § 15-19-3.[10]

The government's lone response on the "nature" factor hinges on an Alabama law that strips juvenile courts of jurisdiction over defendants like Jews. That statute provides that any individual who is (1) at least 16 years old and (2) has been charged with a crime that would be a Class A felony if committed by an adult—conditions that indisputably applied to Jews—"shall not be subject to the jurisdiction of juvenile court but shall be charged, arrested, and tried as an adult." Ala. Code § 12-15-204. Two problems. First, § 12-15-204 merely strips juvenile courts of jurisdiction and vests it in adult courts; it doesn't deprive juveniles of the right, once in adult court, to apply for youthful-offender

---

[10] These features of Alabama's YO process distinguish it from other states' YO processes that *do* produce adult convictions. *See Wilks*, 464 F.3d at 1243 (stressing that the Florida juvenile defendant was "treated as an adult criminal" in all respects save for caps on his sentence length and limits on facilities where he could serve his sentence).

22-10502               Opinion of the Court                    12

status. *J.C. v. State*, 941 So. 2d 1011, 1013 (Ala. Crim. App. 2005); *accord Gordon*, 647 So. 2d at 95 ("The determination whether a defendant is to be granted youthful offender status is left to the discretion of the trial judge."). And notably, that's exactly the route that Jews took here. Second, even if the government thinks that Jews should have been tried as an adult under Alabama law, the fact is that he wasn't. And his YO status made a difference—it ameliorated the substantive consequences of his adjudication and triggered more flexible and informal procedures. And as we have explained, those features distinguish Alabama YO adjudications, in their very "nature," from adult convictions.

*Sentence received*. We readily concede that Jews's three-year sentence is not insubstantial and, indeed, that we've conferred "adult" status on less. *See Wilks*, 464 F.3d at 1243 (16 months). Still, the length of Jews's sentence isn't decisive. In *Wilks*, for instance, we emphasized the proceeding's nature, stressing that the defendant there had been "treated as an adult criminal" during the YO proceeding in all respects other than his term and place of imprisonment. *Id*. So while on balance this factor favors the government, it isn't conclusive.

*Time served*. It's unclear how much time Jews served for his Alabama YO adjudication. All the record reveals is that, at a hearing in the district court, Jews whispered to his lawyer that he didn't serve the full 3 years. But he got no further; he was shushed by the lawyer and the judge, who told him that how long he served didn't matter. So we just don't know. Still, the government says

that "there can be no dispute that [Jews] served a substantial portion of the sentence, at least." Br. of Appellee at 18 n.7. If that's true—we've seen no evidence of it, though it's plausible—then Jews's actual sentence was on par with the 27-month, adult-leaning sentence in *Pinion*, so we're willing to count this factor in the government's favor, as well.

★  ★  ★

On balance, the *Pinion* factors favor Jews, indicating that his YO adjudication wasn't "adult." The sentence-length and time-served factors, we hold, yield to the stronger indications of the classification and nature factors: Because of the defendant's age, Alabama law doesn't even treat YO adjudications as convictions, let alone adult convictions. And the law further shields YOs "from the stigma and practical consequences of a conviction for a crime." *Raines*, 317 So. 2d at 366. Alabama's YO system differs from the adult system from stem to stern, in both substance and procedure. To call it "adult," we think, would strain credulity.

### III

We hold that Jews's Alabama YO adjudication wasn't "adult" under either U.S.S.G. § 2K2.1 or § 4A1.2. His Guidelines range of 70–87 months was thus wrong in two respects. Jews's sentence is vacated, and the case is remanded for resentencing.

**VACATED** and **REMANDED**.