**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 24-11747

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JHON YANDRY QUIJIJE-MERO,

*Defendant-Appellant.*

————————————————

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cr-20299-BB-5

————————————————

————————————————

No. 24-11837

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

2                     Opinion of the Court                   24-11747

*versus*

LAURO AGUILAR-GOMEZ,

*Defendant-Appellant.*

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cr-20299-BB-1
_____

_____

No. 24-11856
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JHON HENRY ALVARADO-VALENCIA,

*Defendant-Appellant.*

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cr-20299-BB-6
_____

_____

No. 24-11792
Non-Argument Calendar
_____

24-11747               Opinion of the Court                    3

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ARTURO YONHATAN GIL-ZARCO,

*Defendant-Appellant.*

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cr-20299-BB-3
_____

_____

No. 24-11838
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JOSE FERNANDO LOPEZ-ANCHUNDIA,

*Defendant-Appellant.*

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cr-20299-BB-2
_____

—————————————
No. 24-12305
Non-Argument Calendar
—————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JUAN MANUEL TORRES-HERNANDEZ,

*Defendant-Appellant.*

—————————————
Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cr-20299-BB-4
—————————————

Before BRANCH, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

Codefendants Jhon Quijije-Mero, Lauro Aguilar-Gomez, Jose Lopez-Anchundia, Arturo Gil-Zarco, Juan Torres-Hernandez, and Jhon Alvarado-Valencia (collectively, "appellants") appeal their convictions and sentences for drug-related crimes under the Maritime Drug Law Enforcement Act ("MDLEA"). Collectively, they raise three arguments on appeal. First, they argue that the district court erred in denying their motion to dismiss the indictment because the MDLEA is unconstitutional as applied to them because their vessel was seized in Mexico's Exclusive Economic Zone ("EEZ"), which is not part of the "high seas," and

24-11747                 Opinion of the Court                 5

is therefore not subject to Congress's authority. Second, they argue that the district court erred in denying their motion to dismiss the indictment because their prosecution violated the Due Process clause and exceeded Congress's authority under the Felonies Clause of the Constitution because the offense had no nexus with the United States. Finally, four of the six appellants— Quijije-Mero, Lopez-Anchundia, Gil-Zarco, and Alvarado-Valencia—challenge the district court's denial of a minor-role reduction under the Sentencing Guidelines.[1] After careful review, we affirm.

## I.    Background

In 2023, the United States Coast Guard attempted to stop the appellants' go-fast vessel within the waters of Mexico's EEZ. The vessel displayed no indicia of nationality. The vessel initially refused to stop, and a helicopter was called in to assist with the interdiction. The Coast Guard observed crewmembers on the vessel throwing packages into the water. The helicopter fired unsuccessful warning shots, followed by disabling shots, that ultimately stopped the vessel. The Coast Guard then boarded the vessel, and defendant Aguilar-Gomez identified himself as the master of the vessel, but he declined to make a claim of nationality

---

[1] Torres-Hernandez does not raise any sentencing challenge. And Aguilar-Gomez does not directly raise a sentencing challenge because he affirmatively declined to seek a minor-role reduction at sentencing. Instead, he merely argues that if his codefendants prevail on their minor-role reduction challenge on appeal, then he too should receive such a reduction based on the facts of the case and his relative culpability.

for the vessel.  The Coast Guard recovered 28 bales from the water, which contained approximately 1,121 kilograms of cocaine.

Thereafter, a grand jury in the Southern District of Florida indicted the six defendants on one count of knowingly conspiring to possess with the intent to distribute five or more kilograms of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C §§ 70503(a)(1), 70506(a) & (b) and 21 U.S.C. § 960(b)(1)(B)(ii), and one count of knowingly and intentionally possessing five or more kilograms of cocaine while on board a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C §§ 70503(a)(1), 70506(a), 21 U.S.C. § 960(b)(1)(B)(ii), and 18 U.S.C. § 2.

The defendants jointly moved to dismiss the indictment on two grounds.  First, they argued that the MDLEA was unconstitutional as applied to them because the alleged offenses occurred in Mexico's EEZ, not on the "high seas," and, therefore, their conduct was beyond the reach of Congress's authority under the Felonies Clause of the Constitution.  Second, they argued that the alleged offense conduct lacked a sufficient nexus to the United States, such that their prosecution violated due process and the Felonies Clause.  Following a response by the government and a hearing on the motion to dismiss, the district court denied the motion.

Thereafter, all six defendants entered an open plea of guilty to both counts as charged.

Prior to sentencing, the United States Probation Office prepared a presentence investigation report ("PSI") for each defendant.    As relevant to this appeal, Quijije-Mero, Lopez-Anchundia, Gil-Zarco, and Alvarado-Valencia objected to the PSI's offense level calculation, arguing that they were entitled to a two-point minor-role reduction under the Sentencing Guidelines.  They argued that they played a minor role in the offense because they only transported the cocaine, they did not know the full scope of the conspiracy, and they had very limited courier-type roles in the overall drug-trafficking scheme.  They maintained that other, unidentified individuals were more culpable in the drug-trafficking scheme, such as the individuals who recruited him, those who coordinated the drop, those who made the drugs and owned the drugs, and those who were intended to distribute the drugs once they reached their destination.[2]  The government opposed each of their requests for a minor-role reduction.

Following lengthy arguments at sentencing concerning the reduction, the district court denied the reduction request for each of them.  With regard to Quijije-Mero, the district court explained that Quijije-Mero "certainly . . . understood" that he was transporting 28 bales of cocaine on a vessel across international

---

[2] Notably, Aguilar-Gomez did not argue for a minor-role reduction.  Rather, at sentencing, Aguilar-Gomez's counsel explained that he did not seek a minor-role reduction because he did not "believe that that [was] appropriate, in full candor of the Court, in the circumstances of our particular client."

waters, and that he understood his actions were illegal. It noted that although Quijije-Mero may not have been the operator of the vessel and may not have had exclusive decision-making powers in the group, he was part of the overarching trafficking group, he stood to earn $1,000 for his part, and he actively threw cocaine bales into the water during the pursuit. Accordingly, it concluded that, in comparing Quijije-Mero's conduct to that of his codefendants, he did not play a minor role in the offense.

Similarly, with regard to Lopez-Anchundia, the district court noted that he was charged with the same two counts as the other defendants and that he was deemed responsible for possessing the full 1,121 kilograms of cocaine. It acknowledged that Lopez-Anchundia was not the owner or operator of the go-fast vessel or the owner of the cocaine, but it did not believe that those two facts alone justified a two-level minor-role reduction.

Regarding Gil-Zarco, the district court explained that, based on the stipulated facts and the undisputed statements in the PSI, Gil-Zarco had "much more involvement" than a mere drug courier. Accordingly, the district court concluded that he was not entitled to a minor-role reduction. Likewise, the district court overruled Alvarado-Valencia's objection for similar reasons.

The district court sentenced Quijije-Mero, Lopez-Anchundia, Gil-Zarco, and Alvarado-Valencia to a below-guidelines sentence of 75 months' imprisonment to be followed by

24-11747                Opinion of the Court                9

three years' supervised release.[3]  It sentenced Aguilar-Gomez, who was the operator of the vessel, to a below-guidelines sentence of 85 months' imprisonment to be followed by three years' supervised release.  This appeal followed.

## II.    Discussion

The appellants raise (A) an as-applied constitutional challenge to the MDLEA; (B) a due process challenge to their prosecution based on the lack of a nexus between their conduct and the United States; and (C) a sentencing challenge to the district court's failure to award them a minor-role reduction.  We address each argument in turn.

### A.  The as-applied constitutional challenge

All six appellants argue that the district court erred in denying their motion to dismiss the indictment because the MDLEA is unconstitutional as applied to them.  They maintain that their vessel was seized in the waters of Mexico's EEZ, which is not part of the "high seas," and is therefore not subject to Congress's authority under the Felonies Clause of the Constitution.[4]  They

---

[3] The district court also imposed a below-guidelines sentence of 75 months' imprisonment to be followed by three years' supervised release on Torres-Hernandez.  However, as noted previously, Torres-Hernandez does not challenge any aspect of his sentence on appeal.

[4] Under Article I, Section 8, Clause 10 of the Constitution, Congress has "three distinct grants of power: (1) the power to define and punish piracies, (the Piracies Clause); (2) the power to define and punish felonies committed on the high Seas, (the Felonies Clause); and (3) the power to define and punish offenses against the law of nations (the Offences Clause)."  *United States v.*

acknowledge that their claim is foreclosed by our decision in *Alfonso*, but they maintain that *Alfonso* was wrongly decided and they seek to preserve the issue for further review.

The MDLEA makes it a crime to "knowingly or intentionally . . . possess with intent to manufacture or distribute, a controlled substance" on board "a vessel subject to the jurisdiction of the United States," and to conspire to do the same. 46 U.S.C. §§ 70503(a)(1), (e)(1), 70506(b). The statute defines a "vessel subject to the jurisdiction of the United States" as including "a vessel without nationality." *Id.* § 70502(c)(1)(A). A "vessel without nationality" is defined to include "a vessel aboard which the master or individual in charge fails . . . to make a claim of nationality or registry for that vessel." *Id.* § 70502(d)(1)(B). The MDLEA "applies even though the [criminal] act is committed outside the territorial jurisdiction of the United States." *Id.* § 70503(b).

In *Alfonso*, we rejected a constitutional challenge that Congress lacked the authority under the Felonies Clause of the Constitution to prosecute offenses occurring in an EEZ—"the waters extending 200 nautical miles seaward of and adjacent to the territorial sea of a nation"—because those waters were not part of the "high seas." 104 F.4th at 818. In rejecting this challenge, we held that "international law does not limit the Felonies Clause" and that EEZs were "part of the 'high seas' for purposes of the Felonies

*Alfonso*, 104 F.4th 815, 820 (11th Cir. 2024) (alteration adopted) (quotations omitted), *cert. denied*, 2025 WL 1426696 (May 19, 2025).

Clause." *Id.* at 823, 826–27; *see also United States v. Canario-Vilomar*, 128 F.4th 1374, 1381–82 (11th Cir. 2025) (reaffirming *Alfonso*'s holding that Congress was not constrained by international law in crafting the MDLEA, and rejecting the appellant's argument that Congress could not reach his conduct because it occurred in an EEZ). Thus, the appellants' as-applied constitutional challenge to Congress's constitutional authority to regulate conduct in Mexico's EEZ is squarely foreclosed by circuit precedent. *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) ("Under [our prior-panel-precedent] rule, a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this [C]ourt sitting *en banc*."). Although the appellants argue that *Alfonso* was wrongly decided for several reasons, the argument that a case was wrongly decided does not overcome the prior-panel-precedent rule. *United States v. Lee*, 886 F.3d 1161, 1163 n.3 (11th Cir. 2018). Accordingly, the appellants are not entitled to relief.

## B.    The nexus challenge

All six appellants argue that the district court erred in denying their motion to dismiss the indictment because their prosecution violated the Due Process Clause and exceeded Congress's authority under the Felonies Clause of the Constitution because their offense had no nexus with the United States. They acknowledge that their claim is foreclosed by circuit precedent, and they seek to preserve the issue for further review.

We have repeatedly held that "the MDLEA is a valid exercise of Congress's power under the Felonies Clause as applied to drug trafficking crimes without a 'nexus' to the United States." *United States v. Cabezas-Montano*, 949 F.3d 567, 587 (11th Cir. 2020) (collecting cases); *United States v. Hernandez*, 864 F.3d 1292, 1303 (11th Cir. 2017); *United States v. Campbell*, 743 F.3d 802, 810–12 (11th Cir. 2014); *United States v. Rendon*, 354 F.3d 1320, 1325 (11th Cir. 2003) ("[T]his circuit and other circuits have not embellished the MDLEA with a nexus requirement."). Relatedly, we have also repeatedly "held that the Fifth Amendment's Due Process Clause does not prohibit the trial and conviction of aliens captured on the high seas while drug trafficking because the MDLEA provides clear notice that all nations prohibit and condemn drug trafficking aboard stateless vessels on the high seas." *Cabezas-Montano*, 949 F.3d at 587; *Campbell*, 743 F.3d at 812 (same). Accordingly, the appellants are not entitled to relief on this claim.

### C. Sentencing challenges based on minor-role reduction

Four of the appellants, Quijije-Mero, Lopez-Anchundia, Gil-Zarco, and Alvarado-Valencia, argue that the district court erred in denying them a minor-role reduction under the sentencing guidelines.[5]

---

[5] Aguilar-Gomez acknowledges that his counsel did not argue for a minor-role reduction at trial, but he nevertheless asserts that "if [we] find[] that a minor role adjustment was appropriate for the co-defendants, [then] it should also apply to him" based on the facts of the case. In sum, he does not argue that the district court erred in calculating his guidelines range. Instead, he essentially seeks to preserve the issue in the event that we conclude that his

24-11747            Opinion of the Court            13

"[A] district court's determination of a defendant's role in the offense is a finding of fact to be reviewed only for clear error." *United States v. De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (*en banc*).

The Sentencing Guidelines provide that a defendant is entitled to a two-level decrease in his offense level if he "was a minor participant in any criminal activity." U.S.S.G. § 3B1.2(b). The guideline's commentary explains that a minor participant role reduction applies to a defendant who is "less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." *Id.* § 3B1.2, cmt. (n.5).[6] The defendant bears the burden of establishing by a preponderance of the evidence that he is entitled to a minor-role reduction. *United States v. Valois*, 915 F.3d 717, 731 (11th Cir. 2019).

A determination of whether a defendant is entitled to this reduction is a fact-intensive inquiry based on the totality of the circumstances. *See* U.S.S.G. § 3B1.2, cmt. (n.3(C)). In making its

---

codefendants should have received the minor-role reduction. Because we conclude that the other defendants were not eligible for a minor-role reduction, we do not reach this issue.

[6] In *United States v. Dupree*, we held that that courts "may not defer" to the commentary to the Sentencing Guidelines "if uncertainty does not exist" in the guideline itself. 57 F.4th 1269, 1275 (11th Cir. 2023) (*en banc*) (quotation omitted). However, here, both parties rely on the commentary and do not dispute its validity. Thus, we will rely upon it as well in determining whether the district court properly denied the minor-role reduction. *See United States v. Jews*, 74 F.4th 1325, 1327 & n.2, 1328 (11th Cir. 2023) (relying on the commentary of a guideline where "[n]o party contest[ed] the commentary's validity . . . or the propriety of its interpretation of [the guideline's] text").

determination, the district court should consider various factors, including:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.

*Id.* § 3B1.2, cmt. (n.3(C)(i)–(v)). "The court must consider all of these factors to the extent applicable, and it commits legal error in making a minor role decision based solely on one factor." *Valois*, 915 F.3d at 732 (quotations omitted).

> [Additionally, we have] established two principles to guide the determination of whether a defendant played a minor role in the criminal scheme: (1) the defendant's role in the relevant conduct for which he has been held accountable at sentencing, and (2) his role as compared to that of other

participants in his relevant conduct.  In making the ultimate finding as to role in the offense, the district court should look to each of these principles and measure the discernable facts against them.

*Id.* (alterations adopted) (quotations and citation omitted).

The district court has "considerable discretion in making [the] fact-intensive determination" of whether a defendant played a minor role in the offense.  *United States v. Boyd*, 291 F.3d 1274, 1277–78 (11th Cir. 2002).  "The district court's choice between two permissible views of the evidence as to the defendant's role in the offense will rarely constitute clear error so long as the basis of the . . . decision is supported by the record and does not involve a misapplication of a rule of law."  *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016) (alteration adopted) (quotations omitted).  "[W]e will not disturb a district court's findings unless we are left with a definite and firm conviction that a mistake has been committed."  *Id.* (quotations omitted).

Quijije-Mero, Lopez-Anchundia, Gil-Zarco, and Alvarado-Valencia argue that the district court clearly erred in denying them the two-level minor-role reduction because the court erroneously measured their culpability against only their codefendants instead of against all of the participants in the overall drug trafficking conspiracy, such as the people who recruited them, those who owned the drugs and orchestrated the trip, and the drug distributors.  They also argue that, even when compared to each other, they each played a minor role in the offense because they

were mere couriers, not captains, masters, or operators. Finally, they argue that the district court failed to properly consider all of the specified factors in the commentary to U.S.S.G. § 3B1.2.

Here, the district court did not clearly err in denying Quijije-Mero's, Lopez-Anchundia's, Gil-Zarco's, and Alvarado-Valencia's request for a minor-role reduction. Contrary to their claims, the relevant inquiry is whether the defendant "played a relatively minor role in the conduct for which he has already been held accountable—not a minor role in any larger criminal conspiracy." *Valois*, 915 F.3d at 732 (alteration adopted) (quotations omitted). Thus, the district court did not clearly err by failing to compare them to other individuals involved in the overall conspiracy, such as the drug distributors, persons who recruited them, or the maker and owner of the drugs. *See id.*; *see also De Varon*, 175 F.3d at 945 (holding that when determining if a defendant is a minor participant, the district court "must measure the defendant's role against the relevant conduct for which [he] was held accountable at sentencing . . . [and] may also measure the defendant's role against the other participants . . . in that relevant conduct").

Furthermore, the district court did not err in its comparison of the defendants with each other. Although they each argue they had minor roles, the record establishes that they all knowingly participated in the illegal transportation of a large quantity of cocaine, they were critical to the transportation part of the trafficking scheme, they were set to receive money for their services, and they were all held responsible for the same conduct

and the same quantity of drugs. These were all appropriate factors for the district court to consider. *See Cruickshank*, 837 F.3d at 1193, 1195 (listing some of the relevant factors to consider in making the minor-role determination).

Contrary to the appellants' positions, the district court did not improperly consider only a single factor. Rather, the record confirms that the district court considered each defendant's lengthy arguments about a minor-role reduction and considered the totality of the circumstances in determining that each of them did not qualify for the reduction. While they may disagree with the district court's ultimate determination, "the district judge [was] in the best position to weigh and assess [each] defendant's role in [the] relevant conduct and the relative degrees of culpability of the other participants in that conduct." *De Varon*, 175 F.3d at 938. Based on the record in this case, we "are [not] left with a definite and firm conviction that a mistake has been committed." *Cruickshank*, 837 F.3d at 1192 (quotations omitted). Accordingly, we conclude that Quijije-Mero, Lopez-Anchundia, Gil-Zarco, and Alvarado-Valencia are not entitled to relief on their respective sentencing challenges.

### III.   Conclusion

For the above reasons, we affirm the appellants' convictions and sentences.

**AFFIRMED.**