**NOT FOR PUBLICATION**

# In the
# United States Court of Appeals
## For the Eleventh Circuit

———————————————

No. 23-10175

Non-Argument Calendar

———————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JOSE YOVANNY CUETO-SANCHEZ,
  a.k.a. Youanny Cueto,

*Defendant-Appellant.*

———————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20282-BB-1

———————————————

———————————————

No. 23-10176

Non-Argument Calendar

———————————————

UNITED STATES OF AMERICA,

2                      Opinion of the Court                    23-10175

*Plaintiff-Appellee,*

*versus*

REINALDO BORBOSA-GUEVARA,
   a.k.a. Reinaldo Barbosa Guebara,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20282-BB-2
_____

_____

No. 23-10236
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

CARLOS GUZMAN-JAVIER,
   a.k.a. Carlos Guzman,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20282-BB-3
_____

Before NEWSOM, GRANT, and MARCUS, Circuit Judges.

PER CURIAM:

Jose Yovanny Cueto-Sanchez, Reinaldo Borbosa-Guevara, and Carlos Guzman-Javier (collectively, "defendants") appeal their convictions for conspiracy to possess with intent to distribute cocaine while on a vessel subject to the jurisdiction of the United States. Guzman-Javier also appeals his sentence. The defendants collectively challenge the district court's jurisdiction over their case, arguing that: (1) the government lacked authority to prosecute them for a felony committed on the high seas under the Maritime Drug Law Enforcement Act ("MDLEA"), because their conduct took place in Venezuela's exclusive economic zone ("EEZ") and EEZs are excluded from the high seas under international law; and (2) Congress exceeded its authority under the Felonies Clause by defining "vessel without nationality" in the MDLEA to include vessels that are not stateless under international law. Individually, Guzman-Javier argues that: (1) his prosecution violated his Due Process rights and exceeded Congress' powers under the Felonies Clause, since the offense bore no connection to the United States; and (2) the district court clearly erred in declining to apply a minor-role reduction to his sentence. After careful review, we affirm.

## I.

When a motion to dismiss the indictment is based on subject matter jurisdictional grounds, we review the district court's denial *de novo*. *United States v. Alfonso*, 104 F.4th 815, 820 (11th Cir. 2024), *cert. denied*, No. 24-6177 (U.S. May 19, 2025). Likewise, we review "'*de novo* a district court's interpretation of a statute and whether a

statute is constitutional.'" *Id.* "Under our prior-panel-precedent rule, a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this Court sitting *en banc*." *United States v. Canario-Vilomar*, 128 F.4th 1374, 1376–78 (11th Cir. 2025), 128 F.4th at 1381 (citation modified). We've "'categorically rejected an overlooked reason or argument exception to the prior-panel precedent rule.'" *Id.*

When a defendant preserves his objection to the denial of a role reduction, we review the district court's factual determination of his role for clear error. *United States v. De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (*en banc*). The district court has "considerable discretion" in determining whether a role reduction is appropriate. *United States v. Boyd*, 291 F.3d 1274, 1277–78 (11th Cir. 2002).

## II.

First, we are unpersuaded by the defendants' claim that the government lacked authority to convict them of a felony committed on the high seas. The MDLEA makes it a crime to "knowingly or intentionally . . . possess with intent to manufacture or distribute, a controlled substance" on board "a [covered] vessel subject to the jurisdiction of the United States," and to conspire to do so. 46 U.S.C. §§ 70503(a)(1), (e)(1), 70506(b). The statute defines a "vessel subject to the jurisdiction of the United States" as including "a vessel without nationality." *Id.* § 70502(c)(1)(A). A "vessel without nationality" includes "a vessel aboard which the master or individual in charge makes a claim of registry and for which the

claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." *Id.* § 70502(d)(1)(C). The MDLEA "applies even though the act is committed outside the territorial jurisdiction of the United States." *Id.* § 70503(b).

Under Article I of the Constitution, Congress has "three distinct grants of power: (1) the power to define and punish piracies, (the Piracies Clause); (2) the power to define and punish felonies committed on the high Seas, (the Felonies Clause); and (3) the power to define and punish offenses against the law of nations, (the Offences Clause)." *Alfonso*, 104 F.4th at 820 (citation modified); U.S. Const. art. I, § 8, cl. 10.

In *Alfonso*, the defendants appealed their convictions under the MDLEA, where the United States Coast Guard had seized a vessel in the Dominican Republic's EEZ, challenging the constitutionality of the MDLEA as applied to them under the Felonies Clause. 104 F.4th at 818–19. In response to their constitutional challenges, we noted that we "repeatedly have upheld the MDLEA as a valid exercise of Congress's power to define and punish . . . Felonies on the high Seas." *Id.* at 820 (citation modified). We also held that "international law does not limit the Felonies Clause." *Id.* at 826. We concluded that a nation's EEZ is "part of the 'high seas' for purposes of the Felonies Clause in Article I of the Constitution," so, "enforcement of the MDLEA in EEZs is proper." *Id.* at 823, 827.

We affirmed this holding in *Canario-Vilomar*, in which two appellants -- one seized in a vessel 37 nautical miles north of Panama, the other seized in a vessel 145 nautical miles north of

6                      Opinion of the Court                    23-10175

Colombia -- challenged the district court's jurisdiction. 128 F.4th at 1376–78. There, they argued, *inter alia*, that the MDLEA exceeds Congress's authority under the Felonies Clause of the Constitution, and that one appellant's arrest did not occur on the high seas because he was arrested in Colombia's EEZ. *Id.* We relied on *Alfonso* to conclude that Congress was not constrained by international law in crafting the MDLEA. *Id.* at 1381. Again relying on *Alfonso*, we also rejected the argument "that Congress could not reach him merely because he chose to traffic drugs in Colombia's EEZ rather than farther out into the open ocean." *Id.* at 1382.

Here, the defendants' arguments are foreclosed by our prior holdings -- that EEZs are part of the high seas and enforcement of the MDLEA in EEZs is proper. *Alfonso*, 104 F.4th at 823, 827 ("Because the 'high seas' includes EEZs, enforcement of the MDLEA in EEZs is proper."); *accord Canario-Vilomar*, 128 F.4th at 1382. To the extent they raise any arguments about this issue that we did not previously address in our earlier cases, there is no "'overlooked reason or argument exception to the prior-panel precedent rule.'" *Canario-Vilomar*, 128 F.4th at 1382. Thus, we affirm as to this issue.

Next, we find no merit to the defendants' claim that Congress exceeded its authority under the Felonies Clause by defining "vessel without nationality" in the MDLEA to include vessels that are not stateless under international law. In *Canario-Vilomar*, we rejected the argument "that the MDLEA's definition of a vessel without nationality -- specifically, the inclusion of vessels for which a claimed nation can neither confirm nor deny registration -- is ultra

vires." *Id.* at 1381.  Relying on *Alfonso*'s holding that the Felonies Clause is not limited by customary international law, we reasoned that "[i]t follows that international law cannot limit Congress's authority to define 'stateless vessel' for purposes of the MDLEA," thereby foreclosing the appellants' argument, even though *Alfonso* did not tackle this precise issue.  *Id.* (citing *Alfonso*, 104 F.4th at 826).

As with the first issue, the challenge here to the MDLEA's definition of a "vessel without nationality" -- which includes vessels that are not stateless under international law -- is foreclosed by our case law.  We've held that international law does not limit Congress's authority to define what constitutes a stateless vessel without nationality for the purposes of the MDLEA, expressly rejecting the defendants' argument on appeal.  *Id.* ("[W]e reject [appellants'] contention that Congress was constrained by international law in crafting its definition of a stateless vessel or in defining the boundaries of the high seas.").  We affirm as to this issue as well.

Turning to Guzman-Javier's individual arguments on appeal, we are unconvinced by his claim that his prosecution violated his Due Process rights and exceeded Congress' powers under the Felonies Clause.  In *Canario-Vilomar*, an appellant argued that "that the MDLEA violates principles of due process because it allows the United States to assert jurisdiction over foreign nationals for conduct that bears no nexus with the United States," although the appellant acknowledged that we had rejected similar arguments.  *Id.* at 1382.  We agreed that the argument was "plainly foreclosed by our binding precedent."  *Id.* at 1382–83 (citing *United States v.*

*Campbell*, 743 F.3d 802, 810 (2014) (rejecting an argument that Congress exceeded its authority under the Felonies Clause when it enacted the MDLEA because the appellant's drug trafficking offense lacked any nexus to the United States)).  In so holding, we emphasized that we "ha[d] explained repeatedly" that "the conduct proscribed by the MDLEA need not have a nexus to the United States because universal and protective principles support its extraterritorial reach."  *Id.* at 1383 (citation modified).

Here, as Guzman-Javier concedes, his argument is foreclosed by controlling authority holding that the MDLEA need not have a nexus to the United States in light of "universal and protective principles."  *Id*.  We affirm as to this issue too.

Finally, we are unconvinced by Guzman-Javier's claim that the district court clearly erred in declining to apply a minor-role reduction to his sentence.  Provided the "'court's decision is supported by the record and does not involve a misapplication of law,'" the "'choice between two permissible views of the evidence' as to the defendant's role in the offense will rarely constitute clear error.'"  *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016).  Determining if a defendant played a minor role in the offense is a fact-intensive inquiry "where no one factor is 'more important than another.'"  *Id.* at 1195.  The defendant has the burden of proving his minor role in the offense by a preponderance of the evidence.  *De Varon*, 175 F.3d at 939.  "[A] district court is not required to make any specific findings other than the ultimate determination of the defendant's role in the offense."  *Id.* at 940.

Section 3B1.2 of the Sentencing Guidelines directs the sentencing court to decrease a defendant's offense level by two levels "[i]f the defendant was a minor participant in any criminal activity," by four levels "[i]f the defendant was a minimal participant in any criminal activity," and by three levels in cases falling between a minor and minimal participant. U.S.S.G. § 3B1.2. A minor participant is one "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." *Id.*, cmt. n.5.[1] Application Note 3(A) provides that a "defendant who is accountable under § 1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline." *Id.*, cmt. n.3(A). One example is a defendant "who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under § 1B1.3 only for the quantity of drugs the defendant personally transported or stored may receive an adjustment under this guideline." *Id.*

In determining whether to apply an adjustment, courts "should consider the following non-exhaustive list of factors":

---

[1] A sentencing court may consider the Sentencing Commission's interpretation of a Guideline as contained in the Commentary to the extent that a Guideline is "'genuinely ambiguous.'" *United States v. Dupree*, 57 F.4th 1269, 1275 (11th Cir. 2023) (*en banc*). However, we've relied on the commentary of a guideline where "[n]o party contest[ed] the commentary's validity . . . or the propriety of its interpretation of [guideline's] text." *United States v. Jews*, 74 F.4th 1325, 1327–28 & n.2 (11th Cir. 2023).

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

*Id.*, cmt. n.3(C). Application Note 3(C) provides as an example that "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline." *Id.* The Note further states that "[t]he fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity." *Id.* "The court must consider all of the § 3B1.2 factors to the extent applicable, and it commits legal error in making a minor role decision based solely

on one factor." *United States v. Cabezas-Montano*, 949 F.3d 567, 606 (11th Cir. 2020) (citation modified).

In *De Varon*, we held that determining the defendant's role in the offense should be informed by two key considerations in turn: (1) the defendant's role in the relevant conduct for which he has been held accountable at sentencing; and (2) his role compared to that of the other participants in his relevant conduct. 175 F.3d at 940. At step one, the sentencing judge has no duty to make subsidiary fact findings to justify a determination as to the defendant's role so long as the decision is supported by the record and any disputed factual issues are resolved. *Id*. at 939–41. A defendant must prove that he played a minor role in the relevant conduct attributed to him. *Id*. "[W]here the relevant conduct attributed to a defendant is identical to [his] actual conduct, []he cannot prove that []he is entitled to a minor role adjustment simply by pointing to some broader criminal scheme in which []he was a minor participant but for which []he was not held accountable." *Id*. at 941. For example, a defendant's status as a drug courier is not dispositive because his conduct within that role may or may not qualify for a role reduction. *Id*. at 942. "[I]n the drug courier context, . . . the amount of drugs imported is a material consideration . . . . [and] may be dispositive -- in and of itself -- in the extreme case." *Id*. at 943.

At step two, the defendant's role is weighed against only those identifiable participants who were involved in the relevant conduct attributed to the defendant who are relevant to this inquiry. *Id*. at 944. "'Even if a defendant played a lesser role than the

other participants, that fact does not entitle [him] to a role reduction since it is possible that none are minor or minimal participants.'" *United States v. Martin*, 803 F. 3d 581, 591 (11th Cir. 2015).

In *Cabezas-Montano*, we applied the two-step framework in *De Varon* after the commentary to § 3B1.2 was amended to provide the non-exhaustive factors listed above. 949 F.3d at 606–07. In the first step, we found that the record showed "all three defendants knowingly participated in the illegal transportation of a large quantity of high-purity and high-value cocaine" and that the defendants' transportation roles moving a large quantity of cocaine was important and critical to the drug-trafficking scheme and was relevant to the fourth factor in U.S.S.G. § 3B1.2, cmt. n.3(C). *Id*. We found that, while these facts did not render the defendants ineligible for a minor-role reduction, they supported the district court's denial of one. *Id*. at 607. We also found that the fact that each defendant was to receive $20,000 for their transportation roles showed that they stood to benefit from the criminal act under the fifth factor in the commentary. *Id*. In the second step, we concluded that none of the defendants presented evidence at trial or sentencing that they were less culpable than most other participants in the criminal activity. *Id*. Importantly, we held that the district court was not required to consider the culpability of unknown conspirators, where the defendants had submitted no evidence regarding any co-conspirators, and thus the district court could not have compared the roles of the other co-conspirators to determine if the defendants were less culpable. *Id*. at 608.

Here, the district court did not clearly err in denying Guzman-Javier a minor-role reduction. Applying the first step in *De Varon*, the sentencing court properly analyzed Guzman-Javier's role in the offense. *See* 175 F.3d at 940–43. The district court held Guzman-Javier accountable only for the cocaine he was guilty of transporting, which supports the district court's denial of the reduction. *See id*. at 943. As in *Cabezas-Montano*, Guzman-Javier likely knew the small boat would be carrying cocaine, especially considering the large fee he was promised and that he participated in throwing the cocaine overboard. *See* 949 F.3d at 606–07. And even if Guzman-Javier only received a portion of his promised $15,000 sum, it is irrelevant. As we said in *Cabezas-Montano*, the proper inquiry under the fifth factor of the commentary is how much Guzman-Javier stood to benefit, not how much he already benefited. *See id*.; *see also* U.S.S.G. § 3B1.2, cmt. n.3(C)(v). Still, the court acknowledged that Guzman-Javier and his codefendants "were all directed," and did not have "much decision-making," and thus did not exercise organizational authority. U.S.S.G. § 3B1.2, cmt. n.3(C)(i), (ii).

As for the second step of *De Varon*, the district court properly compared Guzman-Javier's role to that of others in the offense. *See* 175 F.3d at 944; *see also Cabezas-Montano*, 949 F.3d at 606–08. Cueto-Sanchez and Borbosa-Guevara, as identifiable participants in the same conduct, were relevant comparators. *See De Varon*, 175 F.3d at 944. The district court found that Guzman-Javier and Borbosa-Guevara were equally culpable and that Cueto-Sanchez, "by way of his own admission," was operator of the vessel and subject to an

enhancement.  It noted that, although Cueto-Sanchez was subject to an enhancement, Guzman-Javier was not necessarily subject to a reduction.  As for Guzman-Javier's argument that his culpability was inflated when the court disregarded the culpability of unindicted conspirators, our case law holds that the district court is not required to consider the culpability of unknown conspirators.  *See Cabezas-Montano*, 949 F.3d at 608.

On this record, the district court did not abuse its "considerable discretion" in determining Guzman-Javier's role in the offense.  Rather, it took into account multiple salient facts and reached a reasonable conclusion that Guzman-Javier and Borbosa-Guevara engaged in the same conduct with the same level of culpability.  Accordingly, we affirm.

**AFFIRMED.**