[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-10479

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JAMES HARDING,
a.k.a. Old School,
a.k.a. Shakey,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:21-cr-00165-TFM-MU-1

_____

Before WILLIAM PRYOR, Chief Judge, and JORDAN and BRASHER, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether the district court abused its discretion by admitting evidence of drug trafficking as intrinsic evidence of a charged conspiracy that allegedly ended years earlier in a different federal district. A grand jury in the Southern District of Alabama charged James Harding with conspiracy to possess with intent to distribute heroin and possession with intent to distribute heroin. At trial, the United States introduced evidence that agents, in a separate investigation, found multiple firearms and almost two kilograms of heroin at Harding's home in the Northern District of Alabama over two years after the alleged end of the charged conspiracy. The United States offered no evidence linking the seized evidence to other members of the charged conspiracy. The district court admitted the evidence as intrinsic evidence and ruled, in the alternative, that the evidence was admissible as extrinsic evidence under Federal Rule of Evidence 404(b). But the district court rejected Harding's several requests for a limiting instruction. The jury found Harding guilty of both charges. Because the district court abused its discretion by admitting the evidence as intrinsic and because its alternative ruling that the evidence was admissible under Rule 404(b) cannot be affirmed in the absence of a limiting instruction, we vacate Harding's convictions and sentence and remand for a new trial.

## I. BACKGROUND

A federal grand jury returned an indictment that charged James Harding and four codefendants with drug offenses. The indictment alleged that Harding participated in a conspiracy to distribute heroin in the Southern District of Alabama that began in early 2018 and ended on or about April 23, 2019. The indictment charged Harding with two counts: conspiracy to possess with intent to distribute heroin, *see* 21 U.S.C. § 846, and possession with intent to distribute heroin, *see id.* § 841(a)(1).

Before trial, Harding moved to exclude all evidence obtained from a search of his home. While executing a search warrant at Harding's home on September 15, 2021, officers recovered multiple firearms and almost two kilograms of heroin. Prosecutors sought to introduce this evidence under Federal Rule of Evidence 404(b) to establish Harding's intent to participate in the conspiracy. Harding argued that the evidence failed to satisfy Rule 404(b) because it was offered to establish his bad character for drug trafficking.

At a pretrial hearing, the United States argued that the evidence was *extrinsic* evidence admissible under Rule 404(b), but the district court asked whether the evidence could also be *intrinsic* evidence of the charged conspiracy. The United States responded that the evidence could be "admissible as intrinsic evidence" because the indictment identified Harding "as a source of supply for heroin in the charged conspiracy." The district court ruled that the evidence

was intrinsic to the conspiracy. Alternatively, the district court ruled that the evidence was admissible under Rule 404(b).

At trial, the United States called Matthew McCrary, a special agent with the Federal Bureau of Investigation, to explain how agents first learned about Harding, at least under his street name, "Ol' School." McCrary explained that he had received a tip that a person named Kendrick Patrick was trafficking a large quantity of narcotics. After confirming the tip and investigating, McCrary determined that the supplier was Jeremy Snowden. McCrary explained that wiretaps revealed that Snowden and another person, Quantis Clark, were purchasing heroin from someone in Birmingham called Ol' School. But the wiretaps never revealed Ol' School's real name. McCrary also testified that he arrested Harding at 2700 Ensley Five Points West Avenue in Birmingham.

Snowden testified as the United States's key witness against Harding. Snowden explained that he asked Clark to help him find a heroin supplier. Clark referred Snowden to someone named Ol' School, who also went by "Shaky." Snowden identified Harding as Ol' School and explained that he met with Harding and Clark in Birmingham to discuss entering the heroin business together. During that meeting, Harding provided Snowden with two ounces of heroin and directed him to obtain future shipments through Clark. Snowden explained that after the initial meeting, he received regular heroin shipments from Harding and that Harding also supplied heroin on consignment. Snowden testified that Harding taught Clark, who then taught Snowden, how to cut the heroin to make

more of it. When shown a picture of a house located at 2700 Ensley Five Points West Avenue in Birmingham, Snowden identified the house as Harding's residence. Snowden explained that he knew where Harding lived because Clark had pointed out Harding's home while driving by it one day. Snowden admitted that he was arrested in 2019 and was in custody for drug crimes, that he had entered into a plea agreement with the United States, and that he hoped to receive a lesser sentence for his cooperation.

Keith Kidd also testified for the United States. He explained that for several years he had purchased cocaine from Snowden. During one transaction, Snowden told Kidd that the heroin was coming from "[s]omebody from Birmingham named Ol' School." But according to Kidd, Snowden never identified Ol' School. Kidd testified that, like Snowden, he was in custody at the time of his testimony and had entered into an agreement with the United States in exchange for his cooperation.

The United States also called agents to testify about the September 2021 search of Harding's home as part of a separate federal investigation in the Northern District of Alabama. Agents testified that on September 15, 2021, they arrived at Harding's home in Birmingham to execute a drug search warrant. They explained that during the search, they recovered multiple firearms and large quantities of drugs, including two bricks of compressed powder. A

forensic drug analyst testified that the two bricks amounted to nearly two kilograms of heroin.

Harding objected to this evidence. But the district court ruled again that the evidence was admissible "evidence of [the] conspiracy itself" and, in the alternative, that the evidence would have "come in as 404(b) evidence." Before and during each day of trial, Harding requested that the district court give the jury a limiting instruction under Rule 404(b) about the evidence from the September 2021 search of his home, but the district court declined to do so because it ruled the evidence to be "part and parcel" of the charged conspiracy.

The jury found Harding guilty of both charges. The district court sentenced Harding to 960 months of imprisonment, by imposing consecutive sentences of the statutory maximum punishment. Harding appealed.

## II. STANDARD OF REVIEW

We review for abuse of discretion the admission of evidence. *United States v. Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013). A district court abuses its discretion when its ruling "rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006) (citation and internal quotation marks omitted). The district court enjoys broad discretion to admit relevant evidence. *United States v. Watkins*, 42 F.4th 1278, 1287 (11th Cir. 2022). We also review for abuse of discretion a refusal to give a proposed jury instruction. *United States v. Gonzalez*, 975 F.2d 1514,

1516 (11th Cir. 1992). A district court abuses its discretion by deny-ing a requested jury instruction when the instruction is substan-tively correct, it was not substantially covered in the charge given to the jury, and the failure to give it seriously impaired the defend-ant's ability to present an effective defense. *Id.*

### III. DISCUSSION

We divide our discussion into two parts. First, we explain that the district court abused its discretion by admitting the September 2021 search evidence as intrinsic evidence of the charged conspir-acy and that the error was not harmless. Second, we explain that although the search evidence was admissible under Rule 404(b), the district court abused its discretion by failing to provide a limit-ing instruction and that the error was not harmless.

*A. The District Court Abused Its Discretion by Admitting the Evidence from the Search as Intrinsic Evidence of the Charged Conspiracy, and the Error Was Not Harmless.*

Harding argues that the district court abused its discretion by admitting the evidence seized in the September 2021 search as in-trinsic evidence of the charged conspiracy. He contends that the evidence is too temporally remote and is otherwise unrelated to the charged conspiracy. The September 2021 search occurred al-most 29 months after the alleged end of the charged conspiracy, and no trial evidence connects the evidence seized during that search to the charged conspiracy.

Evidence of criminal activity other than the charged offense may be admissible if it is "intrinsic evidence" of the charged offense.

*United States v. Joseph*, 978 F.3d 1251, 1263 (11th Cir. 2020) (citation and internal quotation marks omitted). Evidence is intrinsic if it arises out of the same transaction or series of transactions as the charged offense, is necessary to complete the story of the crime, or is inextricably intertwined with the evidence regarding the charged offense. *Id.* Our precedents explain each kind of intrinsic evidence.

Evidence arises from the same transaction or series of transactions if it is "linked in time and circumstances" with the charged crime. *United States v. US Infrastructure, Inc.*, 576 F.3d 1195, 1210 (11th Cir. 2009). Although our precedents impose no firm temporal proximity requirement, the uncharged act must be "connected with the offenses charged." *See United States v. Muscatell*, 42 F.3d 627, 630–31 (11th Cir. 1995) (citation and internal quotation marks omitted). Evidence of uncharged criminal conduct can be linked with the charged crime "whether the conduct occurs before or after" the charged offense. *See United States v. Zapata*, 139 F.3d 1355, 1357 (11th Cir. 1998).

We have ruled that uncharged acts arise from the same transaction or series of transactions when the uncharged acts involve the same people and criminal scheme. For example, in *United States v. Horner*, we held that evidence of fraudulent tax returns from 2005 and 2006 was intrinsic evidence of a scheme concerning 2007 and 2008 tax returns because the defendants had an "ongoing plan" to divert business cash into their personal accounts and the older evidence was "part of the same plan" and "used the same modus operandi as the charged offenses—diverted cash receipts." 853 F.3d

1201, 1204, 1214–15 (11th Cir. 2017). The evidence of uncharged conduct involved the same people and pattern of conduct. *See id.* at 1215.

Similarly, in *Muscatell*, two defendants were charged with conspiracy, fraud, and money-laundering in connection with a land-flip scheme. 42 F.3d at 628, 631. The scheme was accomplished with inflated appraisals, buyer-rebate schemes, and fraudulent loan applications. *Id.* at 631. Co-conspirators testified about inflated appraisals, buyer-rebate schemes, and fraudulent loan applications that occurred in the months before and after the crimes charged in the indictment. *Id.* at 628–30. We upheld the admission of that testimony as intrinsic evidence because the uncharged acts concerned the same series of transactions. *Id.* at 630. The charged offenses "were not isolated acts," but were instead "part of a series of transactions involving the same principal actors, in the same roles, employing the same modus operandi." *Id.* We explained that other transactions connected with charged offenses "have long been used to show a general pattern, the necessary criminal intent, or the guilty knowledge of the defendant." *Id.* at 631 (quoting *United States v. Dula*, 989 F.2d 772, 777 (5th Cir. 1993)).

Evidence is necessary to complete the story of a crime when the evidence explains the "context, motive, and set-up of the crime" or reveals important details about the criminal scheme. *See United States v. Holt*, 777 F.3d 1234, 1261–62 (11th Cir. 2015) (citation and internal quotation marks omitted). In *Holt*, we held that evidence of drug transactions from 1995 was necessary "to

complete the story" of the charged crime—a conspiracy that began in 2000 and ended in 2010. *Id.* The 1995 evidence was necessary because it helped the jury understand "how [the defendant] came to know and participate in narcotics distribution" with his co-conspirators. *Id.* at 1262.

Evidence is inextricably intertwined with a charged crime if it "forms an integral and natural part of" an account of a crime, *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007), or is "vital to an understanding of the context of the government's case," *United States v. McLean*, 138 F.3d 1398, 1404 (11th Cir. 1998). In *McLean*, a defendant was charged with drug and firearm offenses stemming from controlled sales by confidential informants. *Id.* at 1401. We held that evidence of the defendant's involvement in a drug-sale organization was intrinsic evidence of the charged offenses because the evidence established how the defendant became a target for controlled buys. *Id.* at 1404. The evidence also explained the relationship between the defendant and the confidential informant and was "vital" to establishing the confidential informant's credibility. *Id.*

The district court abused its discretion by ruling that the evidence seized during the September 2021 search was intrinsic evidence of the charged conspiracy. The evidence did not arise from the same transactions. It was not necessary to complete the story of the charged crime. And it was not inextricably intertwined.

The seized evidence did not arise from the same transaction or series of transactions because it was not "linked in time and

circumstances" with the charged crime. *See US Infrastructure*, 576 F.3d at 1210. Harding was charged with a conspiracy in the Southern District of Alabama beginning in early 2018 and ending on or about April 23, 2019. The search evidence was seized in the Northern District of Alabama in September 2021—almost 29 months after the alleged end of the conspiracy. The United States failed to prove *any* link between the search evidence and the charged conspiracy. Harding was not distributing heroin to Snowden in September 2021 because Snowden was arrested in 2019 and remained in custody afterward. *See United States v. Postal*, 589 F.2d 862, 888 (5th Cir. 1979) (stating that "[a] coconspirator's participation in a conspiracy ends with his arrest"). The United States provided no evidence of how Harding acquired the heroin and firearms in his home or where they were headed. In contrast, when we have ruled that uncharged acts were "linked in time and circumstances" with a charged crime, the uncharged acts involved the same parties and the same agreement. *See, e.g.*, *Horner*, 853 F.3d at 1213–15 (holding that tax returns from 2005 and 2006 were intrinsic evidence of a later conspiracy because the evidence proved that the defendants "had an ongoing plan" to divert business cash into their personal accounts and the older evidence was "part of the same plan" and "used the same modus operandi as the charged offenses—diverted cash receipts").

Nor was the search evidence necessary to complete the story of the charged crime. *See Holt*, 777 F.3d at 1262. We have held that evidence of drug transactions from five years before a conspiracy began was necessary to complete the story of a crime because it

"explained how [the defendant] came to know and participate in narcotics distribution[s]" with his co-conspirators. *See id.* But the evidence seized in Harding's home tells us nothing about how Harding conspired to distribute heroin in 2018 and 2019, and the evidence does not implicate any of Harding's co-conspirators.

The search evidence also was not inextricably intertwined with the charged crime. Without some link between the search evidence and the charged conspiracy, we cannot say that the search evidence "form[ed] an integral and natural part of" the account of the charged crime, *Edouard*, 485 F.3d at 1344, or that it is "vital to an understanding" of the case, *McLean*, 138 F.3d at 1404. The United States tried to prove the charged conspiracy by establishing that Harding formed an agreement with Snowden. The search evidence does not enhance one's understanding of that theory because Snowden was arrested in 2019.

The United States counters that a conspiracy is a "series of transactions" and that the search evidence was intrinsic evidence because it "show[s] that Harding engaged in the same types of transactions" after Snowden's arrest. But that argument proves too much. The September 2021 search evidence proves that Harding engaged in drug-related crimes on a different occasion and in a different district than the charged conspiracy. And evidence that a person engaged in "the same types of transactions" on a different occasion is "*not admissible* to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1) (emphasis added).

We review evidentiary errors for harmlessness. *United States v. Green*, 873 F.3d 846, 866–67 (11th Cir. 2017). A non-constitutional error warrants reversal only if "there is a reasonable likelihood that the error affected the defendant's substantial rights." *Id.* at 867. When conducting a harmless-error analysis, we ask "whether the error had substantial influence and whether enough evidence supports the result apart from the error." *Id.* We have held that the erroneous admission of prior-act evidence was harmless when five witnesses gave consistent accounts about a defendant's involvement in a drug-distribution conspiracy. *See United States v. Hubert*, 138 F.3d 912, 914 (11th Cir. 1998). By contrast, we held in *United States v. Hands* that an evidentiary error was *not* harmless when the United States relied on eight "highly questionable" witnesses who "each testified in the hope of receiving a reduced sentence" and whose testimony the United States was "unable to bolster" with "independent corroborating evidence." 184 F.3d 1322, 1330–31 (11th Cir. 1999).

We cannot say that "enough evidence supports the result apart from the error," so the admission of the September 2021 search evidence was not harmless. *See Green*, 873 F.3d at 867. As the United States concedes, Snowden was the "central witness" against Harding. Several witnesses testified that someone named Ol' School was involved in drug activity, but Snowden was the *only* witness who identified Harding as Ol' School. And like the "highly questionable" witnesses in *Hands*, Snowden testified that he had been involved in drug transactions and that he had entered into an agreement with the United States and cooperated with the hope of

receiving a lesser sentence. *See* 184 F.3d at 1330–31. If testimony from *eight* "highly questionable" witnesses was insufficient to render an evidentiary error harmless, *see id.*, then testimony from *one* highly questionable witness is certainly not enough. Snowden's testimony supports the verdict, but the quantity and strength of that untainted evidence is far less substantial than the erroneously admitted evidence.

The United States contends that other evidence corroborated Snowden's testimony: wiretaps established that Snowden and Clark received heroin from someone named Ol' School; Snowden identified Harding's house in a photograph; an agent testified that officers arrested Harding at that photographed home; and Kidd testified that Snowden suggested that he received heroin from a person called Ol' School. But that corroboration is weak. The wiretaps and Kidd's testimony corroborate Snowden's assertion that he received heroin from someone called Ol' School. But that evidence does not establish that Harding *was* Ol' School. That Snowden identified Harding's home in a photograph and that Harding was later arrested at that home does not strongly corroborate Snowden's testimony about Harding's involvement in the drug scheme. Those facts instead corroborate Snowden's testimony that Clark told him where Harding lived.

The United States also encouraged the jury to rely on the erroneously admitted evidence for an improper purpose. During closing argument, the prosecutor asserted that "exhibits that came from the search at Mr. Harding's residence" were "relevant to the[]

charges" against Harding. The prosecutor asked the jury to consider "all the[] firearms" and the "[two] kilograms of heroin" found in Harding's home when deciding Harding's guilt. And the prosecutor explained that if the jury found Harding guilty of conspiracy, then it should consider "the [two] kilograms [of heroin] that were seized from his house" when determining the quantity of heroin for which Harding was accountable. These invitations to rely on the erroneously admitted evidence as evidence of Harding's guilt likely had a "substantial influence" on the jury's verdict. *See Green*, 873 F.3d at 867. So the error was not harmless.

The United States argues that any taint to the conspiracy offense should not affect the distribution charge. But our precedents make clear that evidence of multiple firearms and a large quantity of drugs in a defendant's home can lead to inferences about one's intent to distribute. *See United States v. Madera-Madera*, 333 F.3d 1228, 1233 (11th Cir. 2003) (explaining that federal law "permits an inference of intent to distribute from a defendant's possession of a significantly large quantity of drugs"); *United States v. Terzado-Madruga*, 897 F.2d 1099, 1120 (11th Cir. 1990) ("It is uniformly recognized that weapons are often as much 'tools of the trade' as the most commonly recognized narcotics paraphernalia." (citation omitted)). The erroneously admitted evidence could have improperly influenced the jury on both charges.

*B. Although the Evidence Was Admissible Under Rule 404(b), the District Court Abused Its Discretion by Failing to Give a Limiting Instruction, and the Error Was Not Harmless.*

The district court admitted evidence from the September 2021 search of Harding's home on the alternative ground that it qualified as extrinsic evidence under Federal Rule of Evidence 404(b). Harding argues that this ruling was an abuse of discretion, and he argues that the district court should have provided a limiting instruction. The United States responds that the evidence was plainly admissible under Rule 404(b) and that Harding has abandoned any challenge about the limiting instruction.

A threshold issue is whether Harding abandoned any challenge to the denial of his request for a limiting instruction. A party abandons an issue when he "makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 681 (11th Cir. 2014). Harding's brief focuses primarily on whether the evidence met the requirements for admissibility under Federal Rule of Evidence 404(b). But in a paragraph of his opening brief, he explains that the district court denied his request for a limiting instruction. And he argues that "a limiting instruction could have reduced the risk of undue prejudice." The United States argues that Harding abandoned any challenge regarding the lack of a limiting instruction.

Harding adequately presented a challenge to the denial of his request for a Rule 404(b) limiting instruction. Harding frames his

23-10479              Opinion of the Court                    17

argument in terms of whether the evidence was admissible under Rule 404(b), and our precedent too frames the limiting instruction as a requirement for admissibility. *See United States v. Costa,* 947 F.2d 919, 925 (11th Cir. 1991) ("Extrinsic evidence of past bad acts is admissible to establish intent, *provided* the judge offers a limiting instruction to the jury to the effect that the evidence may not be used to establish that the defendant acted in conformity with the past behavior." (emphasis added)). Harding explains that the district court denied his request for a limiting instruction, and he argues, with a citation to supporting authority, that a limiting instruction would have reduced the risk of unfair prejudice.

Extrinsic evidence of uncharged bad acts is not admissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). But the same evidence might be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* R. 404(b)(2). To be admissible under Rule 404(b), the evidence "must be introduced for a proper purpose, be supported by sufficient evidence, and have probative value that is not substantially outweighed by unfair prejudice." *Horner,* 853 F.3d at 1215. Rule 404(b) is a "rule of inclusion," and Rule 404(b) evidence "should not lightly be excluded when it is central to the prosecution's case." *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003) (citation and internal quotation marks omitted), *abrogated in part on other grounds by Rehaif v. United States*, 139 S. Ct. 2191 (2019). Nevertheless, when the district court admits extrinsic evidence

under Rule 404(b), it "must provide a limiting instruction." *United States v. Tokars*, 95 F.3d 1520, 1537 (11th Cir. 1996).

The September 2021 search evidence was admissible under Rule 404(b) to establish Harding's intent to distribute heroin. A defendant who pleads not guilty to a drug conspiracy puts his intent at issue and "opens the door to admission of prior drug-related offenses as highly probative, and not overly prejudicial, evidence of [his] intent." *United States v. Smith*, 741 F.3d 1211, 1225 (11th Cir. 2013) (citation and internal quotation marks omitted). Officers found a large quantity of heroin in Harding's home. That fact supports an inference that Harding intended to distribute it. *See Madera-Madera*, 333 F.3d at 1233 (explaining that federal law "permits an inference of intent to distribute from a defendant's possession of a significantly large quantity of drugs"). The firearms seized in proximity to the heroin reinforce the inference that Harding intended to distribute heroin. *See Terzado-Madruga*, 897 F.2d at 1120 ("It is uniformly recognized that weapons are often as much 'tools of the trade' as the most commonly recognized narcotics paraphernalia." (citation omitted)).

The probative value of the evidence was not substantially outweighed by a risk of unfair prejudice. We have repeatedly held that evidence of prior drug-related offenses is "highly probative" of a defendant's intent and "not overly prejudicial." *See, e.g.*, *United States v. Perry*, 14 F.4th 1253, 1275 (11th Cir. 2021) (citation and internal quotation marks omitted). And the evidence was not so temporally remote that it lost its probative value. Evidence might

become less probative as time passes, but we have allowed the introduction of drug-related convictions to prove intent, even when the prior conviction "is many years old." *Smith*, 741 F.3d at 1225. The extrinsic acts in *Smith* occurred six and ten years before the charged crimes. *Id.* at 1226. And in *United States v. Dickerson*, this Court affirmed the introduction of drug-distribution evidence that occurred almost two years after the charged conspiracy. 248 F.3d 1036, 1046–47 (11th Cir. 2001). Here, the September 2021 search occurred almost 29 months after the alleged end date of the conspiracy alleged in the indictment. The probative value was not substantially outweighed by a risk of unfair prejudice.

Nevertheless, the district court abused its discretion by denying Harding's request for a limiting instruction. Our precedent is clear: when a district court admits extrinsic evidence under Rule 404(b), the district court "*must* provide a limiting instruction." *Tokars*, 95 F.3d at 1537 (emphasis added). The failure to provide a limiting instruction is an abuse of discretion if the omission "seriously impaired the defendant's ability to present an effective defense." *Gonzalez*, 975 F.2d at 1516. We have held that the absence of a limiting instruction seriously impaired a defendant's ability to present an effective defense when it "opened the door for the jury to consider th[e] evidence in an improper light." *Id.* at 1517. Here, the jury was permitted to consider the search evidence only for a limited purpose. *See* FED. R. EVID. 404(b). The jury was not permitted to consider the evidence as "evidence of [Harding's] character" or as proof "that on a particular occasion [Harding] acted in accordance with [that] character." *See id.* R. 404(a)(1). But the jury was never

informed of this prohibition. So the absence of a limiting instruction "opened the door for the jury to consider this evidence in an improper light." *Gonzalez*, 975 F.2d at 1517. The district court abused its discretion by declining Harding's request for a limiting instruction.

The error was not harmless because it "seriously impaired" Harding's ability to present an effective defense. *See id.* As we have explained, the United States encouraged the jury to rely on erroneously admitted evidence from the search of Harding's home for an improper purpose. By allowing the jury to consider extrinsic evidence as evidence of the charged crimes, the district court relieved the United States "of its burden of persuasion beyond a reasonable doubt of every essential element of the crime." *Id.*

## IV. CONCLUSION

We **VACATE** Harding's convictions and sentence and **REMAND** for a new trial.