**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-10495

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

DICKENSON ELAN,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:22-cr-00148-PGB-LHP-6

————————————

Before NEWSOM, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

Dickenson Elan appeals his conviction and his accompanying 135-month sentence for 1 count of conspiracy to violate the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18

U.S.C. § 1962(d).  On appeal, he first argues that the district court abused its discretion in admitting as relevant evidence the 2014 tax returns of four people whose identities Elan's co-conspirators had stolen, and plainly erred in admitting one of those persons' 2016 tax return.  Second, he argues that insufficient evidence supported the jury's verdict that convicted him of conspiracy to violate the RICO Act.  Third, he argues that the court improperly applied a 22-point enhancement under U.S.S.G. § 2B1.1(b)(1)(L) during his sentencing, based on an overcalculation of his offense's economic loss.  Fourth, he argues that the court's 135-month sentence was substantively unreasonable because the court did not consider the hardship that will result from his removal to Haiti upon his release from custody.

We write only for the parties who are already familiar with the facts, so we include only such detail as is helpful in understanding this opinion.

## I. DISCUSSION

*A. Challenged Evidentiary Rulings*

"[We] review[] a district court's evidentiary rulings for a clear abuse of discretion," *United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003), including its admission of prior crimes or bad acts under Federal Rule of Evidence 404(b) and its admission of evidence over a defendant's objection under Federal Rule of Evidence 403, *United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005) (involving Rule 404(b)).  *See also United States v. Bradberry*, 466 F.3d 1249, 1253 (11th Cir. 2006) (involving Rule 403).  However,

plain-error review applies where a defendant did not object to an evidentiary ruling. *United States v. Edouard*, 485 F.3d 1324, 1343 (11th Cir. 2007). To establish plain error, a defendant must show (1) an error, (2) that is plain, and (3) that affects substantial rights. *United States v. Brown*, 665 F.3d 1239, 1247 n.3 (11th Cir. 2011). If all three conditions are met, we may recognize an error only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. *Id.* Additionally, we will not disturb a court's erroneous evidentiary rulings unless the error affected the defendant's substantial rights. *Dodds*, 347 F.3d at 897.

"Evidence of criminal activity other than the charged offense may be admissible if it is 'intrinsic evidence' of the charged offense," meaning that it "arises out of the same transaction or series of transactions as the charged offense, is necessary to complete the story of the crime, or is inextricably intertwined with the evidence regarding the charged offense." *United States v. Harding*, 104 F.4th 1291, 1296 (citation omitted). "Evidence is necessary to complete the story of a crime when the evidence explains the 'context, motive, and set-up of the crime' or reveals important details about the criminal scheme." *Id.* at 1297 (citation omitted). "Evidence is inextricably intertwined with a charged crime if it 'forms an integral and natural part of' an account of a crime, or is 'vital to an understanding of the context of the government's case.'" *Id.* (citations omitted).

Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Rule 403 provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Rule 403 'is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility.'" *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011) (citation omitted). "In reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Dodds*, 347 F.3d at 897 (citation modified). "Unfair prejudice" means "an undue tendency to suggest decision on an improper basis." *United States v. Kent*, 93 F.4th 1213, 1220 (11th Cir. 2024) (citation modified). "[T]here is no absolute bar on the introduction of evidence which pre-dates an alleged conspiracy if the evidence is otherwise relevant." *United States v. Cross*, 928 F.2d 1030, 1047 (11th Cir. 1991) (citations omitted).

If we hold that the district court abused its discretion in admitting evidence, we conduct a harmlessness review. *Harding*, 104 F.4th at 1298. An evidentiary error "warrants reversal only if 'there is a reasonable likelihood that the error affected the defendant's substantial rights.'" *Id.* (citation omitted). When conducting a harmless-error analysis, we ask "whether the error had substantial influence and whether enough evidence supports the result apart from the error." *Id.* (citation omitted).

Here, the district court did not abuse its discretion in admitting as relevant intrinsic evidence the pre-conspiracy 2014 tax returns of Ruselan Barthelemy, Thony Dussuaud, Lluberke Hernandez, and Paula Reyes because a sham tax preparation firm that Elan participated in, Edvert Tax Prep ("Edvert"), filed unauthorized tax returns in these taxpayers' names during the 2015 tax year as part of the charged conspiracy. The court did not plainly err in admitting Hernandez's 2016 tax return because this return demonstrated that the conspiracy re-used information stolen from taxpayers.

*B. Sufficiency of the Evidence*

We review a challenge to the sufficiency of the evidence and the denial of a Federal Rule of Criminal Procedure 29 motion for a judgment of acquittal *de novo*. *United States v. Beach*, 80 F.4th 1245, 1258 (11th Cir. 2023). The court may enter a judgment of acquittal at the close of the government's evidence or at the close of all evidence, either upon the defendant's motion or *sua sponte*, if the evidence is insufficient to sustain a conviction. Fed. R. Crim. P. 29(a). We will uphold the district court's denial of a Rule 29 motion for a

judgment of acquittal "if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt." *Beach*, 80 F.4th at 1255 (citation modified). We will not overturn a jury's verdict if there is any reasonable construction of the evidence that would have allowed the jury to find the defendant guilty beyond a reasonable doubt. *Id.* In other words, we will reverse a conviction based on insufficient evidence only if no reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *United States v. Williams*, 865 F.3d 1328, 1337 (11th Cir. 2017). We must sustain a verdict where "there is a reasonable basis in the record for it." *United States v. Farley*, 607 F.3d 1294, 1333 (11th Cir. 2010) (quoting *Brown*, 415 F.3d at 1270).

When reviewing the denial of a motion for a judgment of acquittal, we view all facts and inferences in the light most favorable to the government. *Beach*, 80 F.4th at 1255. The evidence need not exclude every reasonable hypothesis of innocence for a reasonable jury to find guilt beyond a reasonable doubt, and the jury is free to choose among alternative, reasonable interpretations of the evidence. *Id.* at 1255-56. The test for sufficiency of evidence is the same regardless of whether the evidence is direct or circumstantial, with no distinction in the weight given to each. *United States v. Guevara*, 894 F.3d 1301, 1307 (11th Cir. 2018).

To establish the crime of RICO conspiracy under § 1962(d), the government must show (1) the existence of an enterprise (2) that engaged in or affected interstate or foreign commerce and (3) each defendant knowingly agreed to violate § 1962(c). *Salinas v.*

*United States*, 522 U.S. 52, 62-65 (1997).  Section 1962 of Title 18 of the U.S. Code stipulates that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

A defendant's agreement to participate in a RICO conspiracy is § 1962(d)'s "touchstone of liability."  *United States v. Graham*, 123 F.4th 1197, 1276 (11th Cir. 2024) (citation omitted).  "The government may prove such an agreement by showing either (1) an agreement on an overall objective of the conspiracy, or (2) that a defendant agreed to commit personally two predicate acts, thereby agreeing to participate in a 'single objective.'"  *Id.* (citation and quotation marks omitted).  However, if the government shows that a defendant agreed on the conspiracy's overall objective, it need not show that a defendant personally agreed to commit two predicate acts.  *United States v. Abbell*, 271 F.3d 1286, 1299 (11th Cir. 2001).  The government may prove an overall objective via circumstantial evidence that each defendant knew of the co-conspirators' participation in the same racketeering enterprise.  *United States v. Gonzalez*, 921 F.2d 1530, 1540 (11th Cir. 1991) (citation and quotation marks omitted).  "Under either theory described above, the government

does not have to establish that each conspirator explicitly agreed with every other conspirator to commit the substantive RICO crime described in the indictment, or knew his fellow conspirators, or was aware of all the details of the conspiracy." *Graham*, 123 F.4th at 1276 (citation and quotation marks omitted).

Credibility determinations are the "exclusive province of the jury." *United States v. Hano*, 922 F.3d 1272, 1289 (11th Cir. 2019) (citation modified). We assume that the jury made credibility determinations in a manner that supports the verdict the jury issued. *United States v. Lebowitz*, 676 F.3d 1000, 1013-14 (11th Cir. 2012). A jury is free to disbelieve a defendant's testimony and consider it as substantive evidence of his guilt. *United States v. Rivera*, 780 F.3d 1084, 1098 (11th Cir. 2015). We defer to a credibility determination by a factfinder "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (citation modified).

Here, the district court did not err in denying Elan's Rule 29 motions for a judgment of acquittal. *See Beach*, 80 F.4th at 1258; Fed. R. Crim. P. 29(a). The court properly held that the government's evidence sufficiently sustained Elan's RICO conspiracy conviction, because a reasonable trier of fact could conclude that Elan's connections to the other co-conspirators and fraudulent businesses, like Edvert and FSL, established his guilt beyond a reasonable doubt. *See Beach*, 80 F.4th at 1255.

There was overwhelming evidence of the existence of a criminal "enterprise" (i.e. several entities that engaged in fraudulent activities involving the use of stolen personal identification information ("PII") to file false and fraudulent tax returns to receive tax refunds to which they were not entitled). There was also overwhelming evidence that this enterprise was engaged in or affected interstate commerce. There was also very ample evidence (not much short of overwhelming) on the basis of which a reasonable jury could conclude that Elan knowingly agreed to participate in the overall objective of the criminal conspiracy, as well as his personal commitment of at least two predicate acts. The evidence consists of, *inter alia*, numerous emails sent by Elan relating to the fraudulent businesses, his having signed two leases for properties from which the fraudulent businesses operated as well as his active, daily management of one of these locations, and other evidence indicating his participation in the criminal conspiracy based on internet protocol ("IP") data, location data, as well as evidence that electronic filing identification numbers ("EFIN") and preparer identification numbers ("PTIN")—numbers used by the criminal enterprise entities—were associated with Elan.

A reasonable jury also could conclude that Elan knowingly agreed to participate in the conspiracy based on his agreement to the conspiracy's overall objective, as well as based on his commission of at least two predicate acts. *See, e.g.*, 18 U.S.C. § 1962(c); *Salinas*, 522 U.S. at 62-65; *Graham*, 123 F.4th at 1276. The government's evidence sufficiently showed that Elan knew of the conspiracy based on his association with Jacques. *See Gonzalez*, 921 F.2d at

1540.  Elan admitted that he knew Jacques prior to the creation of the fictitious business entities, and that Elan lived with Jacques during at least some portion of the entities' operations.  He also admitted that he knew two other conspirators, Jolteus and Poix.  Elan's emails specifically tie him to Edvert and FSL's operations (two of the entities engaging in the fraudulent activities).  Elan knew of the fraud committed by Edvert, the most prolific filer of fraudulent tax returns. Elan sent Jacques a photo of Olivier (a prominent member of the conspiracy who provided the original false taxpayer information used by the enterprise) from his delanonetwo@gmail.com address; Edvert began its filings a week later; and half of Edvert's tax returns used PII purchased by Olivier.  Elan also participated in Edvert because he sent Jacques an email from delanonetwo@gmail.com that contained an EFIN and account login information for Drake tax software, and 162 tax returns then were filed with this EFIN that claimed $1,038,683 in tax refunds.  The filing of three returns with this EFIN prior to Elan's email likely shows that Elan knew of the EFIN's later use by another conspirator, like Jacques.

The government's evidence also associates Elan with another fictitious entity, AAJR, because Elan sent Jacques an email that attached photos of Jacques's passport and a debit card associated with SMMWU Tax Prep, the business listed in the lease that Elan signed for 3040 South Military Trail, which AAJR listed as its address on its tax returns and PTIN applications.  Elan also sent Jolteus an email at securetitle101@gmail.com that attached a photograph of an identification card that Jolteus used to open a bank

account associated with the PTIN application for Destine Edvert, which was later used to file returns for Edvert.

A reasonable jury could conclude that Elan agreed to the conspiracy based on his signature on two leases associated with organizations that filed false tax returns. *Graham*, 123 F.4th at 1276. Elan personally signed the lease for 3040 South Military Trail and was present daily to open and close the office's doors, such that witness Trammell believed that Elan ran the day-to-day operations. The lease listed SMMWU Tax Prep as that location's business, and Elan's email to Jacques that included a photograph of a debit card in SMMWU's name further associated him with the tax preparation business purportedly located at 3040 South Military Trail. Special Agent Pent's rebuttal testimony established that AAJR filed fraudulent tax returns from this location, and the 2014 tax returns of Barthelemy, Dussuaud, and Hernandez confirm that AAJR listed this location as its place of business. Barthelemy's and Dussuaud's testimony confirmed that they never heard of AAJR, and Dussuaud never entered its office or received his refund.

Elan also signed the lease for 1263 South Military Trail, which was listed as the office location for Edvert that it used to file false tax returns. Elan signed this lease as "president" of a business, and the PTINs and 2015 tax returns for Barthelemy, Dussuaud, Hernandez, and Reyes listed this location as Edvert's address. The testimony of Hazel and Special Agents Pent and Beers confirmed that numerous false tax returns were filed from this location's IP

address, and the internet contract for 1263 South Military Trail also listed Elan's 8209 phone number.

A reasonable jury could further conclude that Elan agreed to and participated in another fictitious organization, FSL. *See Graham*, 123 F.4th at 1276. Elan admitted that he created the fslmultiservices@gmail.com email account that FSL used to store PII stolen from De Arrigoitia that was later used to file tax preparer applications, and additional PII that another entity, MFR, used to file false tax returns. Elan's admission shows that he created one of the means by which FSL facilitated the filing of false returns and the sharing of PII between the conspirators' organizations. Elan's phone number was similarly associated with Edvert's email, edverttaxprep@yahoo.com, and his personal email dewin83@gmail.com was used to post job advertisements for tax preparers to further grow the enterprise. The government's evidence showed that Elan used fslmultiservices@gmail.com to apply for prepaid debit cards through CashPass, which the conspirators Cherelus and Louis Michel used to withdraw the money from fraudulent tax refunds. The evidence also showed that Elan listed his phone number in the CashPass application, attached photos of 4 Ever Young that his girlfriend previously had sent to his personal email. Also included in that CashPass application was a driver's license for Fabienne Saint Louis (who was dating one of the co-conspirators) that was located in Elan's email, and a copy of FSL's bylaws sent from fslmultiservices@gmail.com to Jacques the same day that Elan had created FSL's email address. Elan's links to Cash-Pass accordingly associated him with another two conspirators,

Cherelus and Louis Michel, who withdrew the enterprise's funds. The association of every piece of information in the application for CashPass with Elan's communications links him to the means by which FSL and other entities accessed the money generated by the enterprise's activities.

Although most of the government's evidence associates Elan with AAJR, Edvert, and FSL, Elan is sufficiently associated with CMS, MFR, SCA, and YTS because his cousin, Jacques, created all the conspiracy's organizations. Additionally, CMS, MFR, SCA, and YTS were only created after Elan had participated in AAJR, Edvert, and FSL. The government's evidence that Elan had created FSL's email, which contained PII that other entities like MFR used, further linked him to the organizations that operated in later tax years. Elan's use of his personal email to send Jacques a photo of Olivier, who stole PII that was used by all of the enterprise's organizations, was another substantial link between Elan and all the enterprise's organizations.

The government correctly asserts that the jury could treat Elan's testimony as substantive evidence of his guilt, and we assume that the jury made this credibility determination because it supports the guilty verdict. *Lebowitz*, 676 F.3d at 1013-14; *Rivera*, 780 F.3d at 1098. The jury properly decided that Elan was not credible because he denied sending any incriminating emails, even though Special Agent Pent later revealed that the incriminating emails were still present in the inboxes of Elan's personal email accounts at the time of trial. The jury properly decided that Elan was

not credible because he denied that the 8209 number belonged to him, even though its most frequent contact was his girlfriend (Simmons), and after the 8209 stopped messaging Simmons, she became the most common contact in the 1732 phone number that he admitted to owning. Special Agent Pent's testimony that Elan's Gmail accounts would not stay indefinitely logged in further undermined his testimony that someone else had used his accounts to do any incriminating act. Additional testimony by Special Agent Pent that Elan's personal email account included false invoices that were used to receive tax preparation fees for a bank account in Jolteus's name contradicted Elan's blanket denial of wrongdoing.

The jury similarly decided that Elan's testimony—i.e. that he did not know what happened at 3040 South Military Trail, despite managing the property on a daily basis, and that its lease was for a call center, despite its explicit listing of a tax preparation business—was not credible. Elan's refusal to state that he signed the lease for 1263 South Military Trail lease and was only present as a witness, despite clear documentary proof to the contrary, also negated his credibility. Elan has, therefore, not shown that the factfinder's credibility determination would not be accepted by any reasonable factfinder because the government's testimonial and documentary evidence clearly contradicted substantial portions of Elan's testimony. *See Ramirez-Chilel*, 289 F.3d at 749.

Accordingly, the government presented sufficient evidence for a reasonable jury to convict Elan of RICO conspiracy. *See Salinas*, 552 U.S. at 62-65.

*C. Loss Determination*

We review a district court's loss determination for clear error. *United States v. Woodard*, 459 F.3d 1078, 1087 (11th Cir. 2006) (citation omitted). "For a factual finding to be 'clearly erroneous,' [] 'after reviewing all of the evidence, [we] must be left with a definite and firm conviction that a mistake has been committed.'" *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1137 (11th Cir. 2004) (citation omitted).

Section 2B1.1 of the Sentencing Guidelines provides a 22-level enhancement to the offense level for a fraud or theft offense involving more than $25 million, but less than $65 million, in loss. U.S.S.G. § 2B1.1(b)(1)(L). The commentary to this section explains that attributable loss under § 2B1.1(b)(1) "is the greater of actual loss or intended loss." *Id.*, comment. n.3(A).[1] The intended loss includes any "intended pecuniary harm that would have been impossible or unlikely to occur." *Id.*, comment. n.3(A)(ii). "The court need only make a reasonable estimate of the loss." *Id.*, comment. n.3(C). The Guidelines expressly acknowledge that district courts are in a "unique position" to assess the evidence and make a

---

[1] In *Dupree*, we, sitting en banc, held that courts "may not defer" to the commentary to the Sentencing Guidelines "if uncertainty does not exist" in the Guidelines itself. *United States v. Dupree*, 57 F.4th 1269, 1275 (11th Cir. 2023) (en banc). However, we have relied on the commentary where "[n]o party contest[ed] the commentary's validity . . . or the propriety of its interpretation of [the guideline's] text." *United States v. Jews*, 74 F.4th 1325, 1327 n.2, 1328 (11th Cir. 2023). Here, neither party contests the commentary's validity.

reasonable estimate of the loss involved, and that "the court's loss determination is entitled to appropriate deference." *Id.*

Under the Guidelines' relevant-conduct provision, defendants involved in a conspiracy or scheme are liable for all acts and omissions that (i) are within the scheme's scope, (ii) further the scheme, and (iii) are reasonably foreseeable. *Id.* § 1B1.3(a)(1)(B). The commentary for this section states:

> In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (*i.e.*, the scope of the specific conduct and objectives embraced by the defendant's agreement). In doing so, the court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others. Accordingly, the accountability of the defendant for the acts of others is limited by the scope of his or her agreement to jointly undertake the particular criminal activity. Acts of others that were not within the scope of the defendant's agreement, even if those acts were known or reasonably foreseeable to the defendant, are not relevant conduct under subsection (a)(1)(B).
>
> . . .
>
> A defendant's relevant conduct does not include the conduct of members of a conspiracy prior

24-10495                 Opinion of the Court                       17

to the defendant joining the conspiracy, even if the
defendant knows of that conduct (*e.g.*, in the case of
a defendant who joins an ongoing drug distribution
conspiracy knowing that it had been selling two kilo-
grams of cocaine per week, the cocaine sold prior to
the defendant joining the conspiracy is not included
as relevant conduct in determining the defendant's of-
fense level). The Commission does not foreclose the
possibility that there may be some unusual set of cir-
cumstances in which the exclusion of such conduct
may not adequately reflect the defendant's culpabil-
ity; in such a case, an upward departure may be war-
ranted.

*Id.*, comment. n.3(B). We have also held that defendants are liable
for the total loss amount of the conspiracy when actively involved
in furthering the conspiracy's overall objective. *United States v.
Wheeler*, 16 F.4th 805, 830 (11th Cir. 2021) (citation omitted).

Neither we nor the Guidelines insist that district courts cal-
culate loss amount "with utmost precision," and instead allow the
sentencing court to make a reasonable estimate of the loss amount.
*United States v. Bradley*, 644 F.3d 1213, 1290 (11th Cir. 2011). The
district court may "employ a variety of methods to derive a 'rea-
sonable estimate of the loss' to the victims based on the infor-
mation available to the district court." *United States v. Stein*, 846 F.3d
1135, 1152 (11th Cir. 2017) (citation omitted). "[T]he appropriate

method for estimating loss in any given case is highly fact-dependent, and accordingly, district judges are entitled to considerable leeway in choosing how to go about this task." *United States v. Campbell*, 765 F.3d 1291, 1301 (11th Cir. 2014). However, the district court cannot "speculate about the existence of facts and must base its estimate on reliable and specific evidence." *United States v. Ford*, 784 F.3d 1386, 1396 (11th Cir. 2015).

Furthermore, in calculating the amount of loss attributable to a defendant, a district court may rely on trial evidence, undisputed statements in the PSI, and evidence presented at the sentencing hearing. *United States v. Pierre*, 825 F.3d 1183, 1197 (11th Cir. 2016). "[C]hallenges to the facts contained in the PSI must be asserted with specificity and clarity." *United States v. Bennett*, 472 F.3d 825, 832 (11th Cir. 2006). "Because the sentencing court is in the best position to assess the evidence and estimate the loss based upon that evidence the court's loss determination is entitled to appropriate deference and will generally be upheld so long as it is reasonable." *United States v. Horn*, 129 F.4th 1275, 1302 (11th Cir. 2025) (quotation marks omitted, alterations adopted). The government bears the burden to establish the loss amount by a preponderance of the evidence. *Bradley*, 644 F.3d at 1290.

As an initial matter, the government correctly asserts that Elan was required to object with specificity and clarity to the PSI's facts to dispute them for sentencing purposes. *See Bennett*, 472 F.3d at 832. Elan's statement at the sentencing hearing that he "had filed lengthy objections to the facts contained within [the PSI] only for

purposes of [] taking this for appeal," is a blanket denial of the PSI's factual assertions, which is insufficiently specific and clear about why they could not properly be considered in determining the loss amount under the Guidelines.

Here, the district court did not clearly err in its finding that Elan caused more than $25,000,000 of economic loss because Elan did not sufficiently dispute the presentence investigation report's ("PSI") economic-loss calculation, and the government's evidence at trial linked Elan to the operation of multiple sham tax preparation firms that operated over the course of multiple years and the economic loss caused by these entities fell within § 1B1.3's definition of relevant conduct.

## D. Reasonableness of the Sentence

A district court may make findings at sentencing based on undisputed facts in the PSI or evidence presented at sentencing. *United States v. Moran*, 778 F.3d 942, 973 (11th Cir. 2015). "Where a fact pattern gives rise to two reasonable and different constructions, the factfinder's choice between them cannot be clearly erroneous." *United States v. Almedina*, 686 F.3d 1312, 1315 (quotations and citation omitted).

When reviewing for substantive reasonableness, we consider the totality of the circumstances under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). The party challenging the sentence bears the burden of establishing substantive unreasonableness based on the facts of the case and the

18 U.S.C. § 3553(a) factors.  *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

The district court abuses its discretion when it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors."  *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (quotation marks omitted).  The § 3553(a) sentencing factors include (1) the nature and circumstances of the offense and the defendant's criminal history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment, to provide adequate deterrence, to protect the public, and to provide the defendant with training or treatment; (3) the kinds of sentences available; (4) the sentencing range; (5) pertinent policy considered by the Sentencing Commission; (6) avoidance of unwarranted sentence disparities; and (7) restitution to victims.  18 U.S.C. § 3553(a)(1), (a)(2)(A)-(D), (a)(4)-(7).

We have "underscored" that we must give "due deference" to the district court's consideration and weighing of proper sentencing factors.  *United States v. Shabazz*, 887 F.3d 1204, 1224 (11th Cir. 2018) (quotation marks omitted).  The district court need not give all factors equal weight, but may attach great weight to one factor.  *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015).  The court should also consider the particularized facts of

the case and the guideline range, but retains discretion to give heavier weight to any of the § 3553(a) factors. *Id.* at 1259-60.

We do not presume that a sentence outside of the guideline range is unreasonable and give deference to the district court's decision that the § 3553(a) factors support its chosen sentence. *Irey*, 612 F.3d at 1187. An indicator of a reasonable sentence is one that is well below the statutory maximum for the crime. *United States v. Dougherty*, 754 F.3d 1353, 1364 (11th Cir. 2014).

Here, the district court's sentence was not substantively unreasonable because it sentenced Elan at the low end of the advisory guideline range—despite its finding that he had committed perjury and caused millions of dollars of economic loss—based on his lack of a criminal history, the testimony of his family at the sentencing hearing, and the impact of his incarceration on his family. The district court's sentence was not substantively unreasonable solely because the court did not depart downwards based on his expected future removal to Haiti, because the court could weigh Elan's immigration consequences for or against a lower sentence.

**AFFIRMED.**